# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff**

**-vs-**                                                                    **Case No. 2:08-cr-54-FtM-99DNF**

**DANNY RIVERO, and YOHALVIS**
**MOLINA ALFONSO,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DANNY RIVERO'S MOTION TO SUPPRESS EVIDENCE (Doc. No. 72)** |
| **FILED:** | **August 29, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED** as moot based upon the filing of the Amended Motion to Suppress Evidence.

| | |
|---|---|
| **MOTION:** | **DANNY RIVERO'S AMENDED MOTION TO SUPPRESS EVIDENCE (Doc. No. 73)** |
| **FILED:** | **August 22, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

> **MOTION:** YOHALVIS MOLINA-ALFONSO'S MOTION TO SUPPRESS EVIDENCE (Doc. No. 79)
>
> **FILED:** September 8, 2008
>
> ___
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

The Defendants, Danny Rivero ("Rivero") and Yohalvis Molina-Alfonso ("Alfonso") are requesting that the Court suppress the evidence seized from a search of the property located at 205 Ballard Road, Avon Park, Florida and all evidence discovered as a result of the search of the residence. Rivero's Amended Motion to Suppress Evidence (Doc. 73) and Alfonso's Motion to Suppress Evidence (Doc. 79) raise the same issues, therefore, the Court will consider the issues raised by these two Motions together. The Government filed a Response (Doc. 84) arguing that the search of the residence was legal, and the evidence discovered should not be suppressed. The Government filed a Supplemental Response to Motions to Suppress (Doc. 87) and the Defendant, Danny Rivero filed a Memorandum of Law in Support of Motion to Suppress Evidence (Doc. 88). An evidentiary hearing was held on September 24, 2008.

**I. Testimony and Evidence**

The Government presented the testimony of Detective Ernest Gelinas, Deputy Juan Delgado, and Detective Charles Dewayne Proctor. All of these officers are employed by the Highlands County Sheriff's Office. The Government also presented the testimony of Phil McDonald, who is employed with the Cape Coral Police Department and a task force agent with the Drug Enforcement Administration.

The Highlands County Sheriff's Office received information about a possible grow house at 205 Ballard Road, Avon Park, Florida which is located in Highlands County. (Tr.[1] p. 5). There was information from a neighbor that he saw people walking outside of the premises at night with flashlights. (Tr. p. 26). For approximately a month before December 4, 2007, Detective Gelinas checked on this property, but never saw any vehicles or people there. (Tr. p. 5-6). On December 4, 2007, at 8:15 a.m., Detective Gelinas saw four vehicles on this property. (Tr. p. 6). He contacted another detective, Lawrence Snyder with the Avon Park Police Department for back-up. (Tr. p. 6). Detective Gelinas parked away from the property and watched the property, but saw no one. (Tr. p. 6). When Office Snyder arrived, Detective Gelinas drove up to the gate in the driveway, honked his horn a few times, put on his siren and lights, but no one came out of the residence. (Tr. p. 6). He estimates that he used his lights and siren approximately thirty minutes after arriving. (Tr. p. 9). Approximately an hour after he arrived, he saw a white male without a shirt leaving the back of the house, and then returning to the house. (Tr. p. 7, 10). The officers approached the front gate of the residence again, but again no one came out of the residence. (Tr. p. 7).

Detective Gelinas notified his lieutenant and continued his surveillance of the property while he waited for other officers to arrive. (Tr. p. 10). He could not smell marijuana from outside of the gate. (Tr. p. 23). The property has a wooden fence around the perimeter and there is a gate by the road. (Tr. p. 8, Gov. Exh. 1). There is an interior fence around the driveway which keeps the livestock from entering the driveway. (Tr. p. 11-12). The gate at the end of the driveway was closed with a chain and hook, but was not locked. (Tr. p. 8-9, 55, Gov. Exh. 4). Detective Gelinas released the chain

---

[1] "Tr." refers to the Transcript (Doc. 89) of the evidentiary hearing held on September 24, 2008.

and entered the driveway with Detective Proctor on foot between 9:30 and 10:45 a.m. (Tr. p. 9, 10, 55). The officers were attempting to do a "knock and talk" to make contact with the individuals at the residence. (Tr. p. 23). Detective Gelinas was wearing a vest with the word "Sheriff" on it in bold yellow lettering. (Tr. p. 13, 16, 27).

Approximately 15 to 20 feet from the house, Detective Gelinas and Detective Proctor smelled the odor of marijuana. (Tr. p. 13, 56). Officer Snyder was located northwest of the property and communicated with Detective Gelinas that there were two males going out the back of the residence. (Tr. p. 14, 20, 24, 56). Detective Gelinas and Deputy Proctor heard voices and went around the garage where they met two males. (Tr. p. 14, 56). The males were located on the southwest side of the residence in the grass beyond the residence. (Tr. p. 15). The officers asked the suspects to accompany them back to the front of the residence for the officers' safety and to determine if there were other people in the residence. (Tr. p. 56-57).

One male was identified as Danny Rivero who spoke some English and appeared to understand some English. (Tr. p. 15). The other male was identified as Ariel Santana. (Tr. p. 15-16). Detective Gelinas attempted to explain his presence at the residence. (Tr. p. 16). None of the officers drew their weapons. (Tr. p. 16-17). Detective Gelinas asked if anyone else was inside the residence and one of the males said there was other people in the residence. (Tr. p. 17). Deputy Proctor knocked on the front door of the residence and rang the bell. (Tr. p. 17, 57). Approximately a minute or two later, two people came out of the residence. (Tr. p. 17, 57). When the door to the residence was opened, there was strong odor of marijuana emanating from the residence. (Tr. p. 17-18, 57).

Rivero and Alfonso were given consent to search forms in Spanish. (Tr. p. 18, 57, Gov. Exh. 7, 8). Rivero read the consent and appeared to understand it. (Tr. p. 18). Deputy Juan Delgado was

called to the scene to interpret. (Tr. p. 18, 41, 60). Deputy Delgado speaks Spanish and English fluently. (Tr. p. 41). He arrived some time before 10:45 a.m. (Tr. p. 41). When he approached, he was briefed on the investigation. (Tr. p. 42). Deputy Delgado read the consent forms verbatim to the suspects and reviewed the forms with Rivero and Alfonso. (Tr. p. 42, 43, 50-51). The forms had been filled out and signed before Deputy Delgado arrived. (Tr. p. 42). Deputy Delgado discussed the contents of the consent forms with Rivero and Alfonso. (Tr. p. 43). Deputy Delgado told Rivero and Alfonso that they had the right to refuse to consent to search. (Tr. p. 50-51). Rivero and Alfonso consented to the search of the residence and Alfonso agreed to a search of the van. (Tr. p. 45-47, 51).

The Government presented the English translation of the Consent to Search and Waiver of Search Warrant form. (Gov. Exh. 11). The Consent to Search provides as follows:

> I, _____, having been informed of my Constitutional right not to have a search made of the premises/vehicles/persons hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize the Sheriff, or any Deputy Sheriff, Constable, or Police Officer of Highlands County, Florida, or all, to conduct a compete search of my premises located at: _____, or my vehicle described as _____, or my person described as _____. These Officers or Agents are authorized by me to take from my premises/vehicles/persons any papers, materials, or other property which they may desire. This written permission is being given by me to the above listed Officers or Agents voluntarily and without threats or promises of any kind.

(Gov. Exh. 11). The form then had a signature line, a place to circle whether the person signing as the "owner, tenant, employer, employee, common occupant, agent, custodian, or other," and then a place for witnesses. (Gov. Exh. 7, 8 and 11) On Rivero's Consent Form, he indicated that he gave consent to search 205 Ballard Road, and that he was the owner of the residence. (Tr. p. 46, 62 Gov. Exh. 7). Alfonso' consent to search allowed a search of 205 Ballard Road, and a Ford Van. (Tr. p. 46-47, Gov. Exh. 8). He also indicated he was a tenant at the residence. (Tr. p. 48, 60).

After Deputy Delgado explained the consent to search forms, the residence and garage were searched. (Tr. p. 53, 61). The residence had some evidence that it was previously used as a grow house such as pots, but overall it was clean. (Tr. p. 21). In the garage, four strings of marijuana were found hanging on hooks to dry, and new fans, fertilizer and an air conditioning unit were found as were two big shredder machines used to separate marijuana. (Tr. p. 19, 61). The main door to the garage had been closed, but the small side door was opened by one of the suspects. (Tr. p. 21, 31-32). No live plants were found. (Tr. p. 21). Outside of the residence near a van, officers found a garbage bag which contained leaves and stems from marijuana plants. (Tr. p. 21, 38).

**II. Analysis**

The Defendants contend that the entry through the gate and onto the property was unlawful, and therefore the subsequent search of the residence was unlawful, and any evidence obtained from the search should be suppressed. Further, the Defendants argue that the consents to search were not valid. The Government argues that the entry and search were lawful, and the evidence should not be suppressed.

**A. Entry onto Property**

A basic tenant of the Fourth Amendment is that a search of a home without a warrant is presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). Search warrants are generally required, however, there are exceptions to the search warrant requirement. *Id*. In the instant case, the Defendants argue that the officers had no probable cause and

no search warrant when they unlatched the gate, and therefore, their entry onto the property was illegal and all evidence that flowed from that illegal entry should be suppressed.

The first issue the Court must address is whether the Defendants had a reasonable expectation of privacy in the property where the gate was located to determine if that area is protected by the Fourth Amendment. The Fourth Amendment protects expectations of privacy that society is willing to recognize. *Oliver v. United States*, 466 U.S. 170, 177 (1984) (citations omitted). An individual has no legitimate expectation of privacy in an open field, except in the area immediately surrounding his home. *Id*. at 178. Society does not have an interest in protecting privacy in lands accessible to the public and law enforcement officers. *Id*. 179. Society does have an interest in protecting the privacy of a person's home and the curtilage to the home. *United States v. Dunn*, 480 U.S. 294, 300 (1987). To determine if an area is the curtilage, courts consider four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Id*. at 301 (citations omitted).

In the instant case, the proximately of the gate to the home was not very close. The gate was near the street and the house was set back down the driveway. The gate was not adjacent or even near the home. Therefore, it was not in close proximity to the home. The gate was not within an enclosure surrounding the home. The gate and the area of the driveway were not being used for any intimate activities associated with the house. The fence that surrounded the driveway was made of wood and the gate at the end of the driveway was made of metal. A passerby would be able to see through both the fence and the gate, and the residents of the property were not protected by the gate or fence from the observations of people passing the property. The Court finds that the area of the gate and the

driveway where the gate is located is not curtilage of the property, and therefore the Defendants had no Fourth Amendment protections in that area.

In addition, the Fourth Amendment protections are not implicated when an officer enters private land "to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 446 (1971) and *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir. 1991)). Unless the person in possession of the property gives express orders to the contrary, an officer may walk to front door and knock to have questions answered by the occupants. *Id*. (citing *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964)). Officers are permitted to make a small departures from the front door area to be able to make contact with the occupants. *Id*. at 1205 (citations omitted).

The initial entry onto the property was for the officers to gather information from the occupants to confirm or dispel the information that the property was being used as a grow house. Detective Gelinas unclasped the chain and walked up the driveway towards the residence. When Detective Gelinas was notified that two males had left the residence, and Detective Gelinas heard voices, he then began walking towards these individuals in the rear. When he and Detective Proctor returned to the front door, Detective Proctor knocked on the door and rang the doorbell.

In *United States v. Taylor*, 458 F.3d at 1203, the officers drove onto the property from a public road and then passed through an unlocked gate. The officers then approached the front door to knock and talk to the occupants. *Id*. The Court determined that officers are permitted to approach the front door of a residence just as any private citizen would do to talk to the residents. *Id.* at 1204. In the instant case, the gate was latched but not locked. Any private citizen would be able to unlatch the gate

and proceed to the front door of the residence exactly like the officers did. The Court finds that Detective Gelinas' initial entry onto the property and his encounter with the Defendants is covered under the "knock and talk" exception to the Fourth Amendment. *See, United States v. Taylor*, 458 F.3d at 1202).

### B. Consent to Search

The Defendants argue that they did not voluntarily sign the consent forms. The Defendants were given consent forms in Spanish which were filled out by the officers. The Defendants then signed the consent forms. After they signed them, Deputy Delgado arrived, and read and explained the consent forms in Spanish to the Defendants.

It is well settled that under the Fourth Amendment, a search conducted without a warrant issued upon probable cause is "'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S.218, 219 (1973) (citations omitted). One established exception to the requirements of both a warrant and probable cause is that the search is conducted pursuant to consent. *Id*. (citations omitted), *United States v. Brown*, 2007 WL 2688662, *5 (11th Cir. 2007). A consent to search "'must be the product of an essentially free and unconstrained choice.'" *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999), (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989)). The Court must consider the totality of the circumstances to determine if the consent was voluntary. *U.S. v. Drayton,* 536 U.S. 194, 207 (2002)*, Schneckloth v. Bustamonte*, 412 U.S.218, 226, (1973). In considering the totality of the circumstances, the Court must examine several factors including any coercive police procedures, the defendant's cooperation with officers, the defendant's knowledge of his right to refuse to consent, the

defendant's education and intelligence, and the defendant's belief that there is no incriminating evidence to be found. *United States v. Brown*, 2007 WL 2688662, *5 (11th Cir. 2007). The burden is on the Government to show that the consent was freely and voluntarily given. *United States v. Tovar-Rico*, 61 F.3d 1529, 1536 (11th Cir. 1995).

In the instant case, the Defendants were handed the consent forms filled out and they signed the forms. Then Deputy Delgado arrived to interpret. Deputy Delgado testified, that when he arrived on the scene he read the consent forms verbatim to the Defendants and reviewed and discussed the consent forms with them in Spanish. He told them that they had the right to refuse their consent. He made sure that they understood the forms. There was no testimony of any coercive police procedures, the Defendants cooperated with the officers, the Defendants read and were told they had the right to refuse to consent, the Defendants appeared to understand that they were giving their consent to search, and the grow operation was no longer in operation at the time of the search. Even though the Defendants signed the forms prior to Deputy Delgado arriving, after he arrived he explained to the Defendants that they had the right to refuse their consent, and they continued to agree to allow the search to proceed. Based upon the totality of the circumstances, the Government has met its burden of showing that the consents were freely given.

### III. Conclusion

The Court respectfully recommends that Danny Rivero's Motion to Suppress Evidence (Doc. 72) be denied as moot based upon the filing of the Amended Motion to Suppress Evidence, Danny Rivero's Amended Motion to Suppress Evidence (Doc. 73) be denied, and Yohalvis Molina-Alfonso's Motion to Suppress Evidence (Doc. 79) be denied, and that the evidence seized not be suppressed.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __15th__ day of October, 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record